Ronald D. DAVIS, Plaintiff-Respondent-Petitioner,

v.

ALLSTATE INSURANCE COMPANY, Defendant-Appellant.

Supreme Court

*No. 79–473. Argued February 2, 1981.—Decided March 31, 1981.*

(Also reported in 303 N.W.2d 596.)

1

For the petitioner there were briefs by *Ronald Dean Davis* of Los Angeles, California, and *Emma J. Miller*, of counsel, of Milwaukee, and oral argument by *Ronald Dean Davis*.

For the defendant-appellant there was a brief by *Harold A. Dall, Michael A. Mesirow* and *Kasdorf, Dall, Lewis & Swietlik, S.C.*, of Milwaukee, and oral argument by *Harold A. Dall*.

DAY, J.   This is a review of an unpublished decision of the court of appeals dated December 20, 1979, affirming in part and reversing in part the judgment of the Circuit Court for Milwaukee County, GARY A. GERLACH, Circuit Judge.

The principal question on review is: Did the court of appeals err in overturning the trial court's finding that the Allstate Insurance Company (Allstate), exercised bad faith in the course of handling Ronald D. Davis' (insured's) claim under a contract of fire insurance?

The insured is an attorney who graduated from law school in 1974 and immediately entered the private practice of law in Milwaukee.

In 1975, insured obtained a standard "deluxe" business-owner's fire and extended coverage insurance policy from Allstate in the amount of $8,000. The policy coverage was based on Allstate's inspection of the insured's business personal property, which resulted in a written report placing an approximate value of $7,500 on the property in plaintiff's office. A second Allstate inspection in February, 1976, estimated the value of plaintiff's business property at $11,100. Based on this second estimate, the policy limit was increased to $15,000 on Allstate's recommendation. In October of 1976, Allstate conducted another inspection and recommended

that the policy limits be raised to $25,000, however, the policy was not amended.

On February 22, 1977, a fire destroyed all of the contents of insured's law office, including invoices and receipts for purchases of the contents of the office. Allstate was notified of the loss on the day following the fire.

Bruce Piette, an Allstate claims adjuster, was assigned to the claim. He investigated the fire between February 24 and May 15, 1977, and recommended to Allstate a "cash out" settlement of $14,860.04, which was approved by Mr. Piette's supervisor, Larry Peterson, a commercial claims supervisor.

On May 15, 1977, the insured filed a sworn proof of loss statement detailing the property destroyed in the fire and the value of each item, claiming losses in excess of the policy limit of $15,000. Internal Allstate memoranda stated that both Piette and Peterson believed the proof of loss to be substantially completed in proper form.

In a separate internal memorandum, Mr. Piette stated he would offer the plaintiff a lower amount initially, and go up to $14,860 if necessary.

Jerome Mondl, Piette and Peterson's supervisor, rejected their recommendations. He advised Peterson to reject insured's proof of loss for lack of documentation of purchase of the individual items of property claimed. Mr. Mondl did authorize settlement of $4,148.53 which Piette offered the insured to satisfy the claim. This offer was rejected.

The insured then brought this action seeking damages for the fire loss and compensatory and punitive damages for bad faith. The case was tried before a jury. The jury returned a special verdict finding that the insured substantially performed the conditions required by the policy to recover his claim and found damages for losses

to his personal property of $14,860.04. The jury also found that Allstate exercised bad faith in the course of its handling of the claim and awarded compensatory damages resulting from the defendant's bad faith of $12,103 and punitive damages of $30,000.

Allstate's motions after verdict were denied and the trial court affirmed the jury's verdict and judgment was entered in the amount of the jury's verdict plus costs and disbursements for a total of $57,306.54.

The defendant filed a notice of appeal from the entire judgment.

The court of appeals affirmed the jury's finding that the insured substantially performed his obligations under the insurance contract to recover his claim. The court rejected Allstate's contention that an insured must supply certified invoices or receipts establishing the cost of each item of lost property as a precondition to recover, characterizing that theory as "nonsense." The court of appeals found that an insured need only substantially comply with the proof of loss requirements in the insurance contract, which he had done. Accordingly, the jury's verdict finding $14,860.04 as the amount of damage to the insured's personal property was affirmed.

Turning to the bad faith issue, the court of appeals found insured's claim to be "fairly debatable," thus shielding Allstate from charges of "bad faith." Relying on this court's decision in *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 691, 271 N.W.2d 368 (1978), the court held the trial court erred in presenting the bad faith issue to the jury and reversed the jury's findings on that issue.

This court granted the insured's petition for review.

The first question on review is: Did the insured satisfy the conditions of the standard fire insurance policy concerning proof of ownership and valuation of property lost in the fire?

The insurance policy was the standard form required by sec. 203.06, Stats. 1973.[1]

It is clear that insured failed to comply with that part of the insurance contract providing that:

"The insured . . . shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost. . ."

[1] The Standard Policy incorporated by reference to sec. 203.01 provides in lines 90–122:

"**Requirements In Case Loss Occurs.** The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnished a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof, and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any part of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."

He did, however, provide the company with a sworn proof of loss setting out in detail the items lost and the value of each.

The record shows that Allstate's employees did not demand certified copies of the invoices which were lost in the fire until June 10, 1977, nearly four months after the insured's loss occurred. In fact, the record amply supports the insured's contention that until that date, Allstate agreed to verify ownership and valuation by checking with the vendors of the lost property and later by referring to the insured's tax records. The record also shows that insured cooperated with the defendant in determining ownership and valuation of the property.

■

Substantial performance with the terms of the contract is necessary for insured to recover under the policy. Where a party has met the essential purpose of the contract, he has substantially performed under the contract. *M & I Marshall & Ilsley Bank v. Pump*, 88 Wis.2d 323, 333, 276 N.W.2d 295 (1979).

■

We conclude that, on this record, the jury correctly found that the insured substantially performed his obligations under the contract. Allstate on this review does not challenge the affirmance by the Court of Appeals of the award of $14,860.04 to the insured for damage to his property.

The second question is: Did Allstate exercise bad faith in the handling of the insured's claim?

■

The controlling case on the law of bad faith is *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). Bad faith is an intentional tort "which results from a breach of duty imposed as a consequence of the relationship established by contract." *Anderson, supra*, 85 Wis.2d at 687. The duty imposed on an insur-

ance company has been characterized as being analogous to that of a fiduciary. *Anderson, supra,* 85 Wis.2d at 688. "Bad faith" is defined as deceit, duplicity or insincerity. *Anderson, supra,* 85 Wis.2d at 692.

In order to show a claim for bad faith, this court has held that:

". . . a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson, supra,* 85 Wis.2d at 691.

The insurer is, however, entitled to challenge the claim on the basis of debatable law or facts. *Anderson, supra,* 85 Wis.2d at 691; *Drake v. Milwaukee Mut. Ins. Co.,* 70 Wis.2d 977, 236 N.W.2d 204 (1975).

In the instant case, the record on appeal does not include the trial court's instructions to the jury. Where the court's instructions are not in the record, this court must assume that the jury was instructed according to law. *Post v. Thomas,* 240 Wis. 519, 526, 3 N.W.2d 344 (1942). Allstate's counsel conceded in oral argument that this court must assume that the jury instructions were adequate.

Assuming that the court's instructions on bad faith correctly stated the law, we must now consider whether his giving those instructions and submitting the bad faith question to the jury was supported by the evidence.

Allstate contends that no bad faith issue was presented because the failure of the insured to supply certified invoices or receipts showing the cost of each claimed item of property provided a reasonable basis for denying the claim.

The court of appeals found the issue of valuation to be fairly debatable as a matter of law. We disagree.

The insured submitted upon request a sworn proof of loss statement to Allstate, claiming damage to his prop-

erty under the policy of $15,000. The proof of loss statement placed a value on each of nearly four hundred items destroyed by the fire. The testimony of two of defendant's claims personnel considered the statement to be substantially complete. The same Allstate employees recommended a cash payment to plaintiff of nearly $15,000. Allstate investigators had recommended an increase in coverage on plaintiff's property to $25,000 only four months before the fire. Allstate's claims adjuster confirmed the insured's purchase of many of the major items shown on the proof of loss statement. After recommending a cash settlement of nearly $15,000, Allstate's claims adjuster noted in his records that:

"When I get authorization I will attempt to cashout insured for a complete loss. I will start at a low price and work my way up. I'm not going to offer the full amount at first. There is no harm in offering a lower amount at first. I can always go up."

The insured testified that he spoke with Allstate's Commercial Claims supervisor, after the claims adjuster offered only $4,000 to settle the claim. He testified that the supervisor told him:

"We know we owe the money but if you don't take the $4,000, we are not going to offer you anything else and if you don't take the settlement we'll just turn it over to our lawyers and we'll tie you up for the next two or three years in a [sic] litigation and you won't see a dime."

The claims adjuster also wrote to his supervisor stating that:

"I don't feel we should drag this out to [sic] much longer. Insured is more than willing to supply us with tax records." [which had been requested by Allstate to verify ownership.]

Allstate introduced evidence at trial showing that the insured had represented the value of his office proper-

ty at $350 to $3,500 and in one case claimed the property was merely rented by him. These representations were not made to Allstate but in divorce and bankruptcy proceedings and on personal property tax returns.

But whatever the insured's motives were in those proceedings, it is apparent from its inter-office memos that Allstate was not misled as to the property's ownership or value, even if others may have been.

■

We conclude that the evidence before the trial court was sufficient to submit the bad faith question to the jury and find no error in submitting the question.

The jury was obviously persuaded that the property was worth what insured had claimed. That figure was almost identical to the amount recommended by Allstate's representatives to their superiors to settle the claim and $10,000 less than the coverage limits recommended by Allstate's underwriters four months before the fire.[2] Accordingly, the jury determined that Allstate had no reasonable basis for denying the claim.

■

Because there is ample evidence to support that conclusion, we reverse that part of the court of appeals' decision overturning the award of damages for bad faith, and reinstate the award for bad faith of $12,103 in compensatory damages and $30,000 in punitive damages found by the jury and approved by the trial court. Accordingly, we uphold the entire judgment of the trial court for $57,306.54.

■

Finally, Allstate argues that the insured may not recover damages for bad faith because he failed to plead

---

[2] At trial, Allstate's claims adjuster read from his "diary" a form furnished by Allstate, that:

"A good indication of the type and quality of contents insured has in, is in the amount of insurance he has and what underwriting wanted to insure it to."

and prove ratification by the insurance company of the acts of its employees and agents. We conclude that Allstate has waived its right to argue. this issue on appeal by operation of sec. 805.12(2), Stats. 1979–80.[3]

That part of the decision of the court of appeals reversing the judgment of the trial court based on the jury's findings and award on the issue of bad faith is reversed, that part of the court of appeals' decision affirming the judgment based on the jury's award of damages for loss of the insured's personal property is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part and the judgment of the trial court is affirmed.

---

[3] "805.12. Special verdicts. . . . (2) OMITTED ISSUE. When some material issue of ultimate fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, the issue shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on the issue shall be deemed a waiver of jury trial on that issue."