**Stella DUIR, Plaintiff,**

v.

**JOHN ALDEN LIFE INSURANCE COMPANY, a foreign insurance corporation, Defendant.**

**No. 83–C–311.**

United States District Court,
W.D. Wisconsin.

Oct. 31, 1983.

Roy T. Traynor, Wausau, Wis., for plaintiff.

DeWitt, Sundby, Huggett & Schumacher, Madison, Wis., for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

In this diversity action, plaintiff Stella Duir seeks to recover compensatory and punitive damages from defendant John Alden Life Insurance Company for its refusal to pay her medical expenses under a group health insurance policy. Defendant has filed a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. The motion is granted.

On a motion for summary judgment, a court must decide whether any genuine issue of material fact remains in the case, or whether the moving party is entitled to judgment as a matter of law. *Lloyd v. Loeffler*, 518 F.Supp. 720, 722 (E.D.Wis. 1981). For the purpose of deciding defendant's motion, the Court finds the following material facts are undisputed.

### FACTS

Plaintiff Stella Duir (Duir) is an adult resident of the State of Wisconsin residing at 205 Buchanan Street, Mosinee, Wisconsin.

Defendant John Alden Life Insurance Company (JALIC), formerly Gamble Alden Life Insurance Company, is a corporation having its principal place of business at 5100 Gamble Drive, St. Louis Park, Minnesota.

The amount in controversy exceeds $10,-000.

Beginning October 1, 1971 JALIC insured Duir under a group life, disability, and health insurance policy provided through her employer, the Stark Gamble department store in Mosinee, Wisconsin. Duir had been employed as a clerk at that store for some twenty-odd years, but had never previously applied for coverage under the group plan.

The plan provided a modest amount of life insurance, loss-of-time benefits to make up for wages lost should the insured become temporarily disabled, and health insurance covering most major medical expenses.

Under exclusions, the policy stated,

Covered expenses shall not include and in no event shall payment be made for any of the following charges:

\*　　\*　　\*　　\*　　\*　　\*

Charges in connection with a bodily injury arising out of or in the course of

employment for remuneration or profit or in connection with a sickness for which benefits are provided under any workmen's compensation act or similar legislation. However this limitation shall not apply to any Person who is a proprietor or partner and is not eligible under any workmen's compensation or similar law for coverage in connection with such injuries or sickness.

Duir states she never saw the exclusion as written in the policy itself, but did read a promotional brochure stating it in less technical terms: "This plan does not provide benefits for: 4. Expenses resulting from occupational accident or sickness covered by Workmen's Compensation."

The policy also contained a rather standard Notice and Proof of Claims provision requiring the insured to give the insurer notice within 20 days after commencement of loss and, within 90 days after date of loss, to submit proof-of-loss forms or, "written proof covering the occurrence, character and extent of the loss for which claim is made." The policy also had a pre-existing conditions clause limiting to $500 benefits payable for treatment of conditions existing before the insured's coverage under the policy, unless ninety days had passed without treatment.

Within the first ninety days of Duir's coverage under the group policy, she underwent extensive treatment, including back surgery, for a problem that was eventually diagnosed as degenerative disc disease. JALIC initially refused to pay for many of Duir's expenses resulting from that treatment on the ground that her back problem was a pre-existing condition, but after Duir instituted a lawsuit in Marathon County Circuit Court in 1972, the parties settled, with JALIC paying Duir $1,000 and agreeing to cover her future medical expenses in connection with her back problem. During the period 1973 through 1983, JALIC in fact paid out more than $11,000 under Duir's policy, most of which was for expenses related to her back problem, including a second surgery in 1973.

On December 28, 1979 Duir slipped on something while working at the Stark Gamble store in Mosinee, injuring her back. She went home that day and subsequently was never able to return to work.

On January 7, 1980, JALIC received a claim from Duir for prescription drug expenses incurred during calendar year 1979. JALIC paid that claim on January 21, 1980.

JALIC first received notice of Duir's December 28, 1979 back injury through her January 14, 1980 claim for disability benefits under a separate credit disability policy she also held with JALIC. On JALIC's credit disability claim form, she answered a question asking her to describe the illness or injury causing disability as follows: "Back injury, stepped on a ball bearing on the floor and fell on back."

On January 29, 1980 Duir made a claim for general disability benefits under the group policy with the following statement:

Dear Sirs,

I fell an [sic] injured my back at work at Ron Stark's Gamble store where I am employed and I have been off work since December 28, 1979. I don't know when I'll be able to go back to work and would like to know if I can collect sick pay for this time off. Please let me know and if so please send me forms to fill out so I can collect.

Sincerely,
Stella Duir
205 Buchanan St.
Mosinee, Wis. 54455

Fred C. Myers, then JALIC's claims manager, acknowledged Duir's letter, sent her a claims form for the loss-of-time group disability benefits, and mentioned that if disability benefits were payable under Workmen's Compensation for her injury, the $250 a month maximum benefit would be reduced accordingly.

On February 2, 1980, Duir made her second monthly claim under the credit disability policy. Late that month, she also submitted a "Claimant's Supplementary Statement for Loss of Time Benefits." On that form she stated, "I have been disabled

since 12/28/79 after injury on the job and have been taking outpatient blockage shots in the back." Duir indicated that she had been discharged from the hospital on February 20, after a stay of almost two weeks. Dr. Richard L. Buechel, who had treated Duir in the past for her degenerative disc disease, filled in the physician's portion of the claim form, simply stating under the diagnosis section of the form, "Sacrocollygeal area," and under present treatment, "Caudal blocks." Duir did not mention whether she was receiving Workmen's Compensation disability benefits.

On March 4, 1980 Myers wrote a letter to Ron Stark, Duir's employer, requesting information:

> I am sorry to bother you with this request, but it appears I am not making the situation clear to your employee, Stella Duir. She has informed this office that she became disabled due to a work-connected injury as of December 28, 1979 ... she has made no mention of any loss of time benefits she was collecting under Workmens Compensation. As you would probably be aware of such benefits, I am wondering if you could please write me on how much compensation she is collecting.

Stark responded to Myers' query on March 8, 1980 by enclosing the following letter from his Workmen's Compensation insurer, Heritage Mutual Insurance Company (Heritage Mutual): "As a result of our investigation, we have found this to be a compensable Worker's Compensation claim. Mrs. Duir receives a total of $77.33 per week Worker's Compensation benefits, and Heritage Mutual Insurance Company has paid all mileage costs incurred, prescriptions, and medical billings sent to our attention."

On March 24, 1980 Myers wrote Duir explaining that although her group policy had a loss-of-time benefit of $250 a month, it was reducable by benefits received from Stark's Workmen's Compensation insurer. Myers also reminded Duir that, "No medical bills which are incurred through your accident on the job is [sic] payable under policy G–110 [the group policy]."

Two days later, Heritage Mutual informed Duir that it would pay no further Workmen's Compensation benefits because, "[W]e have been unable to connect your current problems with your industrial injury of 12–28–79."

That same day, Duir wrote Myers and related the latest turn of events, enclosing the hospital bill that Heritage Mutual had returned to her unpaid. She also reiterated that her injury had occurred when she had stepped on a ball bearing and fallen at work and that she had been receiving Workmen's Compensation loss-of-time and medical benefits up to that time.

On April 3, 1980 Myers wrote Duir acknowledging receipt of her letter informing him of Heritage Mutual's denial of further benefits and asserting a claim under her policy with JALIC. Meyers told Duir that JALIC could not process her hospital expenses without more information from her, her employer, and her doctor, and he forwarded a health insurance claim form to her on which to provide that information.

Duir never returned the health insurance claim form to JALIC. Instead, she retained attorney Roy T. Traynor. Traynor sent JALIC a notice of retainer on May 12, 1980, indicating that Duir had retained him to represent her in any claim she might have against JALIC arising out of, "an injury sustained in a fall at the Stark Gamble Store."

Myers responded to Traynor's letter on May 22, 1980 by forwarding a copy of his April 3rd letter to Duir. He invited questions from Traynor and inquired in a postscript whether Duir was planning to appeal Heritage Mutual's denial of benefits.

Traynor did not respond to Myers' letter, but Duir must have sent JALIC additional medical bills, for on April 21, 1981 Rosemary Ludonese of JALIC's claims department wrote a letter denying her claim because, "[Y]our condition occurred in connection with employment."

Traynor did, however, pursue a claim against Heritage Mutual on behalf of Duir for $2,010 in temporary total disability benefits, $8,305 in medical expenses, and $7,000 in permanent partial disability benefits. As medical opinions differed regarding the degree to which Duir's fall aggravated her pre-existing work problem,[1] Duir and Heritage Mutual reached a settlement. Their compromise stipulation stated that Duir would receive $10,000, less monies already paid her before termination of benefits on March 26, 1980,[2] leaving a balance of $8,657.65. Under the terms of the stipulation, the sum to be paid would be considered payment towards Duir's permanent partial disability, but would satisfy all three of Duir's claims against Heritage Mutual.

The Wisconsin Department of Industry, Labor, and Human Relations approved the settlement in June of 1981.

On June 30, 1981, more than a year since their last communication, Traynor wrote Myers, sending him a copy of Duir's compromise stipulation with Heritage Mutual without copies of the doctors' reports that had been incorporated therein. In his letter, Traynor stated his belief that JALIC was still liable for Duir's medical expenses under the group policy because the compromise settlement did not establish Heritage Mutual's liability under the Workmen's Compensation Statute. He also enclosed a list of Duir's unpaid medical bills amounting to $8,551.99. Traynor closed as follows: "I realize that this is a complex matter and am certainly willing to discuss any reasonable offer for a negotiated settlement in regard to her claim ... I would appreciate it very much if you would review this matter and let me know if you need any further information."

On July 21, 1981 Myers responded to Traynor's overtures. He agreed that Duir's case was complex, indicated that the JALIC would consider a reasonable arbitrary settlement and asked Traynor to name a reasonable amount.

The parties negotiated over a period of several months. Traynor submitted copies of all Duir's medical statements up to that point and suggested a $4,000 settlement. Myers proposed $2,000, then $3,000 as an appropriate figure. Traynor and Myers also discussed coverage for Duir's future medical expenses, with Myers steadfastly refusing to commit JALIC to payment of any future expenses stemming from Duir's "work-related" back injury.

After a four-month hiatus in correspondence, Traynor wrote Myers on April 6, 1982, asking for copies of all bills submitted to JALIC by Duir's doctors over the years. He also raised the issue of sick pay (loss-of-time benefits) and informed Myers that Duir had incurred additional medical bills since they had discussed the $8,551.99 figure.

On April 9, 1982, Myers wrote back that Duir was entitled to $1,500 in loss-of-time benefits, but that he believed Heritage's settlement with Duir supported JALIC's conclusion that Duir's current back ailment was work-related and excluded by its policy. Myers suggested that Duir apply for Social Security benefits. Two weeks later, he sent copies of the bills in Duir's file to Traynor.

Ten months later, on January 25, 1982, Traynor advised Myers that Duir had received a favorable decision from the Social Security Administration on appeal from an earlier denial of her disability claim. Traynor indicated he was hopeful that Duir would soon have a final decision on her disability and that she would then settle her claims against JALIC ... "Obviously, the extent of benefits that my client receives from Social Security will have a significant effect on her ability to absorb a compromise ...."

---

1. Duir's own doctor found that Duir's fall at work caused her to suffer a 10% permanent partial disability. Heritage Mutual's doctor disagreed.

2. Heritage Mutual had already paid Duir $415.09 for her medical and related expenses and $927.26 in temporary total disability loss-of-time benefits.

The Social Security Administration accepted its Administrative Law Judge's favorable disposition of Duir's case on appeal and issued an award of benefits for total disability retroactive to June, 1980 on April 22, 1982.

Traynor next contacted Myers on October 14, 1982, demanding that JALIC pay Duir $1,500 in loss-of-time benefits and $15,045.62 for her medical expenses incurred since her back injury on December 28, 1979. JALIC paid the loss-of-time benefits without an admission of liability two weeks later.

On November 30, 1982, Traynor informed Myers of Duir's Social Security award and applied, pursuant to the provisions of the group policy, for an extension of benefits and waiver of premium retroactive to June, 1980. Five weeks later, Myers asked Traynor to send him a copy of the Social Security award, which he did on January 11, 1983. At that time, Traynor also enclosed a chronology of Duir's back problems up to December, 1979 and asserted, for the very first time, that, "[A] very substantial number of these problems existed prior to the [Duir's] on-the-job injury of December 28, 1979 ... [B]ecause of the condition which existed before the injury, the aggravation that she sustained from the injury ... rendered her totally disabled."

On March 4, 1983 JALIC sent Duir a check for $2,236.32 as a refund of the premiums she had paid for the group policy from June, 1980 to date. Myers informed Traynor that Duir would continue to be covered by the group life insurance policy until age 65, but that health coverage was terminated because of her eligibility for Medicare.

Duir commenced this lawsuit on March 30, 1983.

## CONCLUSIONS OF LAW

Plaintiff Duir's action against defendant JALIC is grounded in four theories of recovery:

(1) JALIC acted in bad faith in denying Duir's claims under the group policy subsequent to her 1979 fall;

(2) JALIC breached a fiduciary duty owed Duir to settle her claims fairly;

(3) JALIC induced Duir into applying for and paying premiums toward coverage under the group policy by fraudulently misrepresenting its actual intention not to pay her claims under the policy; and

(4) JALIC violated numerous provisions of the Wisconsin Insurance Regulations in the course of its dealings with Duir.

Below, the Court deals with the parties' arguments for and against summary judgment on each cause of action in succession.

### Bad Faith

■ Under Wisconsin law, a plaintiff-insured must prove three elements in order to prevail against an insurance company for its alleged refusal in bad faith to pay a claim:

(1) The insurer was obligated to pay the claim under the terms of the policy;

(2) The insurer lacked a reasonable basis in law or fact for denying the claim; and

(3) The insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978). An insurer is, however, entitled to challenge a claim and litigate it if the claim is fairly debatable on the law or facts. *Id.; Davis v. Allstate Ins. Co.*, 101 Wis.2d 1, 303 N.W.2d 596, 600 (1981).

JALIC argues that Duir cannot possibly prove bad faith in the context of the immediate case given her oft-repeated statement that she had fallen at work and her subsequent failure to provide JALIC with the information requested by Fred Myers, both in his April 3, 1979 letter to Duir and his May 22, 1979 letter to Attorney Traynor.

Regarding the first element, whether JALIC was indeed obligated to pay Duir's

claim, the threshold issue is the meaning of the policy exclusion relied upon by JALIC to deny it.

> Again, the policy purports to exclude, Charges in connection with a bodily injury arising out of or in the course of employment for remuneration or profit or in connection with a sickness for which benefits are provided under any Workmen's Compensation Act or similar legislation. However this limitation shall not apply to any person who is a proprietor or partner and is not eligible under any Workmen's Compensation or similar law for coverage in connection with such injuries or sickness.

JALIC contends this language creates a two-part exclusion, denying coverage of expenses incurred in connection with a bodily injury arising out of or in the course of employment *and* of expenses incurred in connection with sickness for which benefits are provided under Workmen's Compensation. Under this construction, JALIC argues that if an injury is work-related, all treatment expenses are excluded, whether or not the insured would be eligible for complete Workmen's Compensation coverage. Duir's consistent representation that she fell at work, then, would foreclose her recovery under the JALIC group policy even if Heritage Mutual's implicit determination that her injury and resulting expenses were attributable more to her pre-existing condition than to her fall were correct, and its refusal to pay further benefits rightful.

■ The Court finds JALIC's construction needlessly artificial. The "bodily injury arising out of or in the course of employment" language is merely another way of describing an injury that would properly be covered by Workmen's Compensation because of a direct causal connection between that injury and the injured person's employment. *See Gage v. Connecticut General Life Ins. Co.*, 273 S.W.2d 761, 763–64 (Mo.1954). In Wisconsin, for example, an employee is eligible for Workmen's Compensation whenever he is injured, "while performing a service growing out of and

incidental to his employment." Wis.Stat. § 102.03(1)(c)(1) (1981–82). Thus, the distinction created by JALIC is largely illusory: The clause in question should be read as a straight, non-duplication of coverage provision excluding from coverage expenses incurred in connection with any injury or sickness arising out of or in the course of employment for which benefits are provided under a Workmen's Compensation law.

The next question is whether, under this construction, the facts support JALIC's denial of Duir's claim. To this day, there is a dispute as to whether the injuries for which Duir incurred expenses and submitted claims to JALIC were caused by her 1979 fall at work or by her pre-existing degenerative back problem. From the somewhat contradictory medical evidence in the record directed towards the related issue of disability, the Court is convinced that both factors may have played a role in causing her injuries. Under *Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis.2d 555, 278 N.W.2d 857, 863–64 (1979), "where a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss covered by the insured risk even though the excluded risk is a contributory cause." Thus, JALIC could have been liable for Duir's injuries. Regardless of causation, however, Duir's failure to submit the proofs of claim sought by JALIC's Fred Myers from Duir herself and from Attorney Traynor would have proved fatal to any contract claim under the policy.

■ An insured must substantially comply with the terms of the policy, including proof-of-loss requirements, to collect under it. *Davis v. Allstate Ins. Co.*, 101 Wis.2d 1, 303 N.W.2d 596, 598 (1981). *Cf. Martinson v. American Family Mut. Ins. Co.*, 63 Wis.2d 14, 216 N.W.2d 34, 37 (1974) (failure to submit proof of loss defeated insured's action). Proof-of-loss requirements are met whenever,

> sufficient information is given the insurer from which it can form an intelligent estimate of its rights and liabilities under

the contract. It must show that the claim is within the protection of the policy so that if the proof is taken as true by the insurer, payment of the claim might be made ... [T]he insurer is bound to promptly advise its insured of any defects of a formal character in proofs or notice of loss ... to the end that the insured may have an opportunity to correct them, and the insured has a right to assume, until advised to the contrary, that proofs-of-loss served by him were sufficient."

3 J. Appleman, Insurance Law and Practice, §§ 1444 at 113 and 1449 at 10 Supp. (1967, Supp.1982) (citations omitted).

When Duir sent her hospital bill to JALIC's Fred Myers for payment on March 28, 1980, the following information was available to him:

1) Duir had had previous back problems;

2) Duir injured her back when she fell at work on December 28, 1979;

3) Duir's employer's workmen's compensation insurer, Heritage Mutual, initially acknowledged liability for Duir's medical expenses and temporary disability benefits;

4) Three months after Duir's injury, Heritage Mutual disclaimed liability on the ground that Duir's expenses and disability could not be traced to her industrial accident.

At best, this information was ambivalent as proof of JALIC's liability for Duir's medical expenses under the group health contract.

■ If Myers had failed to take any action on Duir's claim at this point, his failure to pay would have been considered a denial of the claim and a waiver of its right to receive proof of loss. See Ehler's v. Colonial Penn Life Ins. Co., 81 Wis.2d 64, 259 N.W.2d 718 (1977).

A finder of fact could conceivably find in that situation that JALIC had breached its contractual duty to investigate and adjust first party claims of its insureds fairly, making it liable under the contract. The same facts could have also led a factfinder to infer, in light of Duir's previous back problems, that JALIC had acted without a reasonable basis for denying the claim and in reckless disregard for whether such a basis existed. See Benke v. Mukwonago-Vernon Mut. Ins. Co., 110 Wis.2d 356, 329 N.W.2d 243 (Wis.App.1982).

Under the undisputed facts of this case, however, Myers did not deny the claim or merely fail to pay it, but instead responded responsibly by requesting further information from Duir within five days of his receipt of the hospital bill. She did not provide it. When Attorney Traynor sent JALIC a notice of retainer a month and a half later, Myers reiterated his request for more information. Duir and her attorney remained silent.

Duir now claims that JALIC had all the information it needed to investigate her claim and grant it through information she had previously provided in connection with her claims for loss of time benefits under the group policy and for credit disability benefits under a separate policy. Although some of the information requested by JALIC in connection with Duir's health claim had in fact been supplied by her with the earlier claims, it was much less detailed than that which Myers requested in the health claims form that he sent her. In any case, Myers put Duir on notice that he was either unaware of the information she had supplied previously or was not relying on it. Furthermore, the Court notes that several of Duir's doctors had prepared reports prior to Myers' second request for more information. See affidavit of Stella Duir, reports attached to Document 8. This information was never furnished to JALIC at any time during negotiations between the parties.

■ Under these circumstances, the Court can only conclude that it was Duir, not JALIC, who failed to comply with the insurance contract. See generally Washington v. Metropolitan Life Ins. Co., 372 Mass. 714, 363 N.E.2d 683 (1977); Kasper v. Provident Life Ins. Co., 285 N.W.2d 548, 555 (N.D.1979) (insurers' duty to investigate conditioned upon fulfillment of in-

sured's obligation to provide proof of claim, in context of accidental death claims under double indemnity life insurance policies).

Besides a California decision of questionable applicability, plaintiff has cited no cases supporting the proposition that an insurer has a duty to independently investigate an insured's claim when the insured has failed to provide sufficient information for the insurer to determine its liability, and has failed to respond to requests for additional information. In fact, the Court has found a case suggesting the opposite. See *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565, 571–572 (7th Cir.1978) (applying Indiana law).

Nor does JALIC's receipt of the compromise stipulation between Duir and Heritage Mutual, more than one year after its request for further information, affect the responsibilities of the parties. For one thing, copies of the medical reports referred to within the stipulation, which Duir now claims prove JALIC's liability under the policy, were never forwarded to JALIC with the stipulation. More importantly, however, Heritage Mutual's stipulation and settlement payment of $10,000 to Duir supports a strong inference that Duir's injuries were at least in part caused by her fall at work. At this point, JALIC certainly had a reasonable basis in fact for denying Duir's outstanding claim for all medical expenses incurred by her since her injury on December 28, 1979, and awaiting a judicial determination of its liability under the policy.

For these reasons, Duir's bad faith claim against JALIC simply cannot, as a matter of law, survive on the facts of this case.

## OTHER CLAIMS

Duir's second theory of recovery is that JALIC breached a fiduciary duty owed her by virtue of their contractual relationship. The Court believes Duir's counsel has misunderstood the law in alleging this cause of action independent of her bad faith claim.

█ "Bad faith" is an intentional tort that is the breach of an insurer's duty to settle first party insurance claims of its insured fairly and in good faith. While that duty may be analogous to the duty of a fiduciary, the only duty of a true fiduciary nature owed an insured by an insurer arises in the context of claims settlement of third-party liability claims. See *Craft, supra,* 572 F.2d at 569. As a restatement of Duir's bad faith claim, her breach of fiduciary duty claim must also fail.

█ In her fraud claim, Duir alleges JALIC induced her to apply for coverage and pay premiums under its group health policy by fraudulently misrepresenting its true intention, throughout their relationship, not to pay her any benefits under the policy. The only shred of evidence supporting an inference of JALIC's alleged intent, its 1973 forwarding of expense reimbursements for Duir's doctor through its litigation counsel, is more than adequately rebutted by the undisputed facts of this case, especially JALIC's payment of over $11,000 in benefits to Duir under the policy.

Although the Court is reluctant to resolve questions of intent on summary judgment, evidence of a fraudulent intent on JALIC's part is so weak on the facts of this case that it is insufficient, as a matter of law, to raise a jury question.

Finally, Duir has alleged JALIC violated numerous administrative regulations promulgated by the Wisconsin Insurance Commission. Duir has cited no statutes or cases creating a private right of action for violation of insurance regulations, and the Court is aware of none. Summary judgment on this claim is also appropriate.

Accordingly,

## ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment be entered against the plaintiff, with costs.