FRENZEL and others, Appellants, vs. FIRST NATIONAL INSURANCE COMPANY, Respondent.

*October 4—November 9, 1954.*

For the appellants there was a brief and oral argument by *P. J. Winter* of Shawano.

For the respondent there was a brief and oral argument by *E. L. Aschenbrener* of Shawano.

CURRIE, J.    The sole question on this appeal is whether there is any credible evidence in the record to sustain the finding of the jury in the special verdict that the damage to plaintiffs' barn was caused by windstorm.  In passing on

this question the evidence must be considered in the light most favorable to sustain the verdict. *Smith v. Benjamin* (1952), 261 Wis. 548, 53 N. W. (2d) 619; and *Smith v. Koch* (1945), 247 Wis. 551, 20 N. W. (2d) 566.

The alleged damage was the pushing outward to the south and the crumbling of the south stone foundation wall of the barn. The dimensions of the barn were 90 feet by 40 feet, the damaged south wall being 90 feet in length. This damaged wall was two feet in width and constructed of stone and mortar with numerous windows and one door set in the wall. This wall was approximately 10 to 12 feet in height and in general the lower one and one-half feet of the wall were sunk below the surface of the surrounding ground. It was set on high ground and the underlying soil was clay. There was no footing underlying the wall but the stones had been set directly upon the underlying clay soil. The wooden superstructure of the barn was set on top of the four masonry walls and had a shingle roof. The barn had been built approximately sixteen years before the alleged date of loss which was June 24, 1952. The witnesses for the plaintiffs testified that immediately prior to that date the south wall of the barn was in good condition, except for a crack near the west end of the wall extending from top to bottom, which crack was from one and one-half to two inches in width.

A wind and rainstorm had occurred on the night of June 24th, and the next morning it was discovered that the stone wall had been pushed outward to the south and had crumbled apart so that nearly the entire wall had to be rebuilt. Some of the windows were cracked and broken. The only damage to the wooden superstructure of the barn was that it had settled downward about six to eight inches and no claim was made for any damage to such wooden superstructure or the shingle roof, which apparently were not damaged in any way.

The plaintiffs called but four witnesses, these being Paul Dittman (the tenant in possession of the farm premises at the time of the alleged windstorm loss) ; his brother, Andrew Dittman; his father, Paul Dittman, Sr.; and one J. L. Rollman. Paul Dittman testified that there was "an awful windstorm" accompanied by rain one night, and the next morning the damage to the south wall of the barn hereinbefore described was discovered. His brother, Andrew Dittman, who also resided on the farm where the barn was located, stated that the damages to the south wall of the barn were first noticed on the morning following the alleged storm which occurred during the night before. He described the storm as "an awful wind and rainstorm," but stated that there had been no undermining of the wall by water.

Paul Dittman, Sr., the father of Paul and Andrew, testified that he lived about one mile from plaintiffs' farm and that on the night in question there was a strong wind and heavy rain. He was asked to describe what he had observed with respect to the wall of the barn the next morning after the storm, and his answer was:

"After the storm, of course, it gave away on the bottom. It washed up against the—the rain washed up against it—from the high wind—from the strong wind—whichever you take it, and something had to give. Couldn't help it."

In another portion of the testimony of Paul Dittman, Sr., the following questions and answers appear:

"*Q*. But based on your knowledge of stone walls—from those you have built—you said the water washed down towards the base of that wall in the clay there? *A*. It came from that side, so it would have to.

"*Q*. The water washed down in the clay at the base? *A*. Yes.

"*Q*. And based on your experience in building walls and so forth, in your opinion that's what caused this wall to buckle? A. Yes."

The testimony of Mr. Rollman was to the effect that he was an insurance agent and real-estate broker residing in the village of Cecil about one and one-half to one and three-fourths miles from the plaintiffs' farm; that a windstorm occurred in the village of Cecil on the night of June 24, 1952, and that there was a terrific gust of wind about 11 p. m. The next morning he had two claims for windstorm damage to adjust. One of these claims was for damage to a wooden garage in the village of Cecil which had been built forty years before. The witness did not state the damage to the garage nor give any testimony regarding what the second claim for windstorm damage was. He stated that he did not know from which direction the wind had blown that had caused the damage. There was no testimony in the record as to the velocity of the wind on the night of June 24, 1952, or the direction from which it had blown. Neither was there any testimony as to any other damage being done on plaintiffs' farm other than that to the south stone wall of the barn.

The defendant Insurance Company called but one witness, the same being one Fred Lemke, a contractor residing in the city of Shawano, who qualified as an expert witness and without objection was permitted to testify that in his opinion frost had caused the undermining of the wall and that it could not have been caused by wind. The reason for his opinion that a wind could not have damaged the stone wall was because the stone wall was more strongly built than the wooden superstructure and the wind would damage the wooden portion of the barn before it would damage the stone foundation wall.

From the foregoing summary of the evidence it is our conclusion that the learned trial court properly set aside the answer of the jury to the first question in the special verdict on the ground that there was no credible evidence to sustain such finding. If the finding of a jury is based upon pure conjecture or speculation, and not upon credible evidence

giving rise to a reasonable inference, this court has repeatedly held that such a finding so grounded cannot be sustained. *Hyer v. Janesville* (1898), 101 Wis. 371, 377, 77 N. W. 729; *Walraven v. Sprague, Warner & Co.* (1940), 235 Wis. 259, 266, 292 N. W. 883; and *Weber v. Mayer* (1954), 266 Wis. 241, 253, 63 N. W. (2d) 318.

*By the Court.*—Judgment affirmed.