Kudella and wife, Appellants, vs. Newark Insurance Company, Respondent.

*March 5—April 8, 1958.*

The cause was submitted for the appellants on the brief of *Vaudreuil & Vaudreuil,* and for the respondent on the brief of *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley,* all of Kenosha.

MARTIN, C. J.   In May of 1953, plaintiffs started building a house in the city of Kenosha.  By August 3d of that year the walls were up and the roof was practically finished; window frames were in and it was ready for construction of the brick veneer.  The house had a cement-block foundation which had been completed about two months before August 4th and all the basement walls had been backfilled to the level of the surrounding area.

Stephen Kudella testified that he visited the building on the afternoon of August 3d and found no damage.  That night, he testified, "there was plenty of howling of wind. As far as how fast it was I can't say.  There was quite a bit of wind and a little rain at that particular time."  Upon visiting the house the afternoon of August 4th he noticed the house had shifted six inches to a foot off the foundation; that the foundation walls on the west and south were cracked and partly fallen into the basement; that lumber piled there had been "blown around;" that there was no damage to the roof or wood portion of the building.

Other evidence introduced consisted of the testimony of several workmen as to the repairs made and the amounts charged therefor.

In the proof of loss forwarded by plaintiffs to the defendant it was stated: "That said loss occurred by reason of a heavy rain and windstorm which moved said building and caused the foundation to collapse."  The complaint alleges that the loss occurred "by reason of a heavy rain and windstorm and caused the foundation on said property to collapse."

It is provided in the policy of insurance that "the coverage of this policy is extended to include direct loss by Windstorm," and further that:

"This company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, sleet, waves, tidal wave, high water or overflow, whether driven by wind or not.

"This company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by water, rain, snow, sand, or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by water, rain, snow, sand, or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail."

The applicable rule is stated in 45 C. J. S., Insurance, p. 962, sec. 888, as follows:

"In order that there may be a recovery on the policy, the cause designated in the policy must have been the proximate, and not a remote, cause of the loss, particularly where the policy requires it to be the 'direct' cause of the loss. If the windstorm or similar peril insured against is the proximate cause of the loss, it need not be the sole cause, and it is generally sufficient to authorize a recovery on the policy that the cause designated therein was the efficient cause of the loss, although other causes contributed thereto, unless the contributing cause is expressly excluded by the terms of the policy."

It was the trial court's opinion that, considering the evidence in the light most favorable to the plaintiffs, there was no proof that wind caused the damage to the foundation walls; and that it would require speculation to conclude that wind caused it. The court also held that there had not been a proof of loss within the policy terms.

In our opinion Stephen Kudella's testimony (which was the only testimony on the subject) that there was "plenty of howling of wind" and "quite a bit of wind" on the night of August 3d, considered together with his description of the condition of the house on August 4th, is not evidence suffi-

cient to sustain the allegation that wind was the cause of the loss. As to the quantity of rain that had fallen, Kudella's testimony was rather vague but he admitted he verified the complaint which used the words "heavy rain and windstorm." He also testified on cross-examination that he did not know whether the walls caved in before or after the house shifted on its foundation. In *Frenzel v. First Nat. Ins. Co.* (1954), 267 Wis. 642, 644, 66 N. W. (2d) 679, where this court sustained the judgment of a lower court which changed the jury's finding of damage by wind and dismissed the complaint, we called attention to the fact that there was nothing in the record as to the velocity of the wind at the time in question or the direction from which it had blown, the storm being described only as "an awful wind and rainstorm."

It was appellants' position that the loss occurred by reason of the wind shifting the house on its foundation, but the evidence did not establish that fact. So far as Kudella knew, the caving in of the walls may have occurred before the house shifted. In that case the cause of the loss could not have been wind. The shifting of the structure and the caving of the foundation walls could have resulted from other causes not eliminated by the plaintiffs. It would therefore be speculative to conclude that wind was the "direct" cause.

Since we agree with the trial court that the evidence was insufficient to support a finding that the loss was occasioned by windstorm, it is unnecessary to discuss the question whether or not proof of loss was given to the insurer within the terms of the policy.

*By the Court.*—Judgment affirmed.