Jeffrey G. BENKE and Kathy Benke, Plaintiffs-Respondents and Cross-Appellants,

v.

MUKWONAGO-VERNON MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant-Appellant and Cross-Respondent.

Court of Appeals

*No. 81–2402. Argued August 26, 1982.—Decided December 22, 1982.*
(Also reported in 329 N.W.2d 243.)

For the plaintiffs-respondents and cross-appellants there was a brief submitted by *Frank R. Terschan* of *Frisch, Dudek & Slattery, Ltd.* of Milwaukee. Oral argument by *Frank R. Terschan*.

For the defendant-appellant and cross-respondent there was a brief submitted by *John H. Niebler* and *Roy E. Wagner* of *Niebler & Niebler* of Menomonee Falls. Oral argument by *John H. Niebler*.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.  An insurance company debated the stable owners' claim for windstorm damage, claiming the collapse of the owners' building was due, instead, to snow. The stable owners sued, and a jury found that wind caused the damage, thus making the insurer responsible for coverage. The stable owners further claimed that the insurance company had failed to exercise proper care in investigating the claim. The jury agreed, found bad faith and also awarded punitive damages. We affirm the findings of coverage and bad faith but reverse the finding of punitive damages. The stable owners cross-appeal, claiming prejudgment interest should have been awarded by the trial court. We agree and reverse that part as well.

The initial dispute concerns whether the insurance company owed coverage at all. The first subissue is a claim by Mukwonago-Vernon Mutual Insurance Company (Mukwonago) that there was insufficient evidence to show wind damage as causing the collapse. We disagree. Before recitation of the evidence, we find it necessary to underscore that we must view the evidence in a light most favorable to the verdict. *Bergmann v. Insurance Co. of North America*, 49 Wis. 2d 85, 87–88, 181 N.W.2d 348, 350 (1970). We make this statement because appellant disgorges its own brand of the facts in its brief. Although we do not doubt the sincerity of appellants' view of the facts, we cannot accept that version but must look at evidence which, under any reasonable view, supports the verdict and removes the question from the realm of conjecture. *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979).

The credible evidence taken in the light most favorable to the verdict is that Jeffrey and Kathy Benke were owners of a riding stable whose main building consisted of an indoor arena. The arena collapsed on February 21, 1979. The Benkes had a defined perils insurance

policy for the riding arena which expressly covered loss directly caused by windstorm but which excluded loss caused by snow and ice. Mr. Benke and a helper shoveled snow off the roof regularly before the collapse. Thus, there were only six to eight inches on the roof at the time of the collapse. The arena roof was built to withstand snow loads far in excess of the amount on the roof at the time of the collapse. Further, the materials used in constructing the building were of good quality. Two experts testified that, in their opinion, wind damage was the substantial cause of the collapse.

The evidence by a Mr. Kopecky, one of the experts, was claimed by Mukwonago as speculative. A search of the record shows that Mr. Kopecky relied, in part, upon empirical data to support his opinion. He also had done a personal quantitative study which would provide credibility to his theory. How good this personal study was and how well founded the empirical studies were goes to the weight of the evidence and not to its admissibility. We note that the testimony of both experts was properly scrutinized by rigorous cross-examination. The judge did not err in allowing either expert to state his opinion, in the judge's words, "for what it was worth" and instructing the jury that they are the sole determiners of the weight to be given to the experts. We conclude that there was a sufficient basis for the jury to find that wind damage caused the collapse.

The second subissue to the dispute on the coverage question is a claim by Mukwonago that the award should be reversed because of an error in the jury instructions. The verdict asked whether the collapse of the riding arena was directly caused by a windstorm. In considering this question, the jury was instructed that if there is a peril which is included in the policy (wind) and a peril which is excluded in the policy (snow and ice) and the

jury believes the two perils acted together to cause the building to come down, then the jury must find the damages were covered under the policy. Therefore, the jury was told that if wind is *a* cause of the collapse, the question of whether wind directly caused the collapse must be answered "yes."

Mukwonago claims this instruction is contrary to the law of Wisconsin. It cites *Kudella v. Newark Insurance Co.*, 3 Wis. 2d 599, 601, 89 N.W.2d 219, 220 (1958), which reads as follows:

If the windstorm or similar peril insured against is the proximate cause of the loss, it need not be the sole cause, and it is generally sufficient to authorize a recovery on the policy that the cause designated therein was the efficient cause of the loss, although other causes contributed thereto, *unless the contributing cause is expressly excluded by the terms of the policy.* [Emphasis added.]

Mukwonago claims that if a peril is excluded and is a contributing factor in the damage, then a jury must be directed to answer the question "no" if it believes that snow and ice, as well as wind, caused the damage.

*Kudella* is no longer the law in Wisconsin. It was overruled as early as *Lawver v. Boling,* 71 Wis. 2d 408, 238 N.W.2d 514 (1976), and again in *Kraemer Bros., Inc. v. United States Fire Insurance Co.,* 89 Wis. 2d 555, 278 N.W.2d 857 (1979). The *Kraemer Bros.* court, citing *Lawver* as authority, said:

Where a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause.

. . . .

If it is proved that an excluded peril is not the sole cause of the collapse, [the insurance carrier] is liable under the policy.

*Kraemer Bros.,* 89 Wis. 2d at 570, 278 N.W.2d at 863–64.

Mukwonago attempts to distinguish *Kudella* from *Lawver* and *Kraemer Bros.* by arguing that both involved an "all-risk" policy while *Kudella* remains good law for a "defined perils" policy as is the case here. Apparently, the reasoning is that when a person buys an "all-risk" policy, he or she is purchasing a special type of coverage which is intended to protect even against damage partially caused by an excluded risk and partially caused by an included risk. This is evidenced by the fact that the person buying an "all-risk" policy is paying more for precisely that type of comprehensiveness. On the other hand, a "defined perils" policy, as the argument goes, is different because the risks included and excluded are fewer, clearer and less expensive. Thus, the insured, from an equitable standpoint, should be held to have clearly discerned that limited coverage was being obtained, unlike the "all-risk" policy.

We disagree with Mukwonago's argument. *Lawver* and *Kraemer Bros.* do not, in any way, limit their holdings to all-risk policies or even imply such limitations. The language in both cases broadly declares that if there is *any* evidence that *any* included peril is a cause of damage, then, it is assumed that the insured paid to be protected from that loss, and it would be unfair to the insured to deny the benefits as paid for. *See Lawver*, 71 Wis. 2d at 422, 238 N.W.2d at 521. We conclude the instruction as given by the trial court is correct, and accordingly the insurer's arguments regarding the coverage dispute must fail.

The next issue relates to the finding of bad faith made by the jury. Again, we are restricted by our standard of review and must only determine whether any credible evidence exists to uphold the verdict. We conclude there is.

Before discussing this issue, we reiterate the definition of bad faith as expressed in *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368, 376 (1978):

To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy *and* the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. [Emphasis added.]

The *Anderson* court further explained this two-pronged test in the following manner. The first prong, requiring the evidence to show the absence of a reasonable basis for denying the claim, is asking: would a reasonable insurer, under the circumstances, have denied or delayed payment of a claim under the facts and circumstances. *Id.* at 692, 271 N.W.2d at 377. The second prong, making it necessary to show knowledge or reckless disregard of a reasonable basis for denial, is asking: is there a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proof submitted by the insured. *Id.* at 693, 271 N.W.2d at 377.

With the *Anderson* tests in mind, we now turn to the record, taken in a light most favorable to the verdict. The Benkes' theory of bad faith rested upon the following. When the Benkes' arena collapsed, they immediately called their insurer. A man by the name of Mr. Craig told them he was sorry, but the Benkes were not covered. This was said without Mr. Craig first investigating the site or asking the Benkes for facts which might show the collapse as being due to a covered peril. The inference that can be drawn is that Mr. Craig immediately took the posture of the collapse being due to snow. Further, he was not about to be persuaded differently. When the Benkes interjected, during the initial telephone

call, that the snow had been shoveled off the roof, Mr. Craig still insisted that the Benkes were not covered.

The next day, Mr. Craig did go to the scene to personally view the collapsed arena. However, no facts or proofs were solicited according to the Benkes. An adjuster, who went with Mr. Craig to the scene, indicated in his field notes that *wind and* snow caused the collapse based on his inspection and conversation with Mr. Benke. Soon, an architect appeared who had been hired on behalf of the insurance company. The architect, Mr. Kopecky, did talk to the Benkes, did spend considerable time at the Benkes' site, did take pictures and measurements and did file a written, detailed report opining that the collapse was due to wind.

When Mr. Kopecky submitted his report, however, he was called the same day and was told "that they had never seen a report stating that a building had collapsed due to wind" and that such a report was "irresponsible." This statement, uncontroverted in the record, raises the clear inference, which the jury can accept, that all prior solicited reports had happily resulted in a finding of snow damage and that it was irresponsible for an expert to *ever* ascertain a collapse as being due to wind.[1]

Further, Mr. Kopecky was fired and told not to proceed any further. Another expert was hired on behalf of the insurance company. This man, skilled in forensics, filed a report stating that the collapse was due to snow damage. The clear inference that may be drawn from this is that the insurance company was not interested in a neutral investigation of the cause; rather, it was concerned about getting an expert to back up its original theory that snow, not wind, caused the collapse.

[1] The statements to Mr. Kopecky were made by Bernard Anderson of Underwriter's Adjustment Company. There is no claim on appeal that the statements cannot be imputed to Mukwonago.

If the jury accepts these inferences, and it appears it did, there is credible evidence to show that a reasonable insurer, under the circumstances here, should not automatically determine the collapse to be caused by an excluded peril and then hire expert after expert until it finds one that comports with its initial determination. A reasonable insurer will conduct a neutral, detached investigation and will then determine whether the investigation proves a claim to be "fairly debatable" such that payment of benefits might not be its responsibility.

Secondly, the inferences which can be accepted by the jury show a reckless disregard of a reasonable basis for denial, *i.e.*, on this record, a reckless disregard by the insurer for neutrality in its position until enough investigation has taken place to merit a knowledgeable response to the claim. Thus, there is credible evidence to sustain the bad faith claim.

We hasten to add two things. First, this is a close case. Yet, it is a case where the jury had the opportunity to choose between differing reasonable inferences. Had this court been the fact finder, it perhaps might have found differently, but, when more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647, 650 (1979).

Second, we wish to make clear what we are not holding. We are not holding that an insurance company is open to suit for bad faith every time it rejects the opinion of the first expert retained and hires a second or third instead. An insurance company may have perfectly good reasons for not relying on the first expert hired. The insurer may simply conclude, in good faith, that the particular expert's opinion is not as well-founded as that

of another. The insurer may believe that the expert's opinion is too speculative to be worthy of belief. We are simply stating the rule that an insurance company has a fiduciary duty to act on behalf of the insured and to exercise the same standard of care that the insurance company would exercise were it exercising ordinary diligence in respect to its own business. *Alt v. American Family Mutual Insurance Co.,* 71 Wis. 2d 340, 348, 237 N.W.2d 706, 712 (1976). There is no reason why an insurer cannot hire another expert if it believes prior investigation has yielded a debatable issue and the expert may have rendered a report not in keeping with the facts.

That is not what happened here, at least according to the inferences accepted by the jury. Here the insurance company made up its mind to deny coverage first and conducted a biased initial investigation. Then, it hired an expert to back it up. It did not investigate in good faith or hire an expert to prepare an opinion in accordance with the good-faith investigation, as it should have done. For the reasons stated, the issue regarding bad faith is affirmed.

We reverse, however, the punitive damage portion of the verdict. For punitive damages to be awarded,

there must be a showing of an evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct.

*Anderson,* 85 Wis. 2d at 697, 271 N.W.2d at 379.

[P]unitive damages are to be awarded "only where the wrong was inflicted 'under circumstances of aggravation, insult or cruelty, with vindictiveness or malice.' "

*Id.* We have read, as we said before, the entire record. There is no "malice" shown toward the Benkes. We see

no evidence of evil intent to oppress the Benkes in a vindictive manner. Rather, it is a case of an insurance company making up its mind right away that the claim was "debatable" and sticking to its belief until it could find an expert to back its hypothesis. Insurers have the right to litigate a claim when they feel there is a question of law or fact which needs to be decided before they, in good faith, are required to pay. *Anderson,* 85 Wis. 2d at 693–94, 271 N.W.2d at 377. Here, they made up their minds before there was a question of fact or law to support their claim.[2] Yet, there is no evidence of vindictiveness and malice, and, therefore, we reverse this portion.[3]

Finally, on the counterclaim, the Benkes claim they are entitled to prejudgment interest at the prevailing commercial market rate. Prejudgment interest in Wisconsin

[2] As part of the bad faith issue, Mukwonago claims that not only was there a debate concerning a question of fact, but there also was a debate as to the law. The insurance company claims it had a reasonable basis for believing that *Kudella* was still good law and that *Lawver* and *Kraemer* did not apply to "defined perils" policies. They also claim that *Lawver* did not overrule *Kudella* but that *Kudella* was not in fact overruled until the *Kraemer* case, which occurred in 1978, after the insurance policy was written up and after the collapse occurred. We view this claim as without merit. *Lawver* was the case that clearly overruled *Kudella; Kraemer* followed. *Lawver* was decided well before the collapse and also before this policy was written. Further, we have already explained in this opinion that *Lawver* and *Kraemer* cannot be limited to the "all-risk" policy as opposed to the "defined perils" policy.

[3] We do not imply a result contrary to the law as stated in *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 291 N.W.2d 516 (1980). *Fahrenberg* says that to sustain an award for punitive damages, the law does not require a specific finding of an intentional and ruthless desire to injure, vex or annoy. We are not finding that there was a lack of specific intent to injure the Benkes in particular. Rather, we are finding insufficient evidence to show reckless indifference to the *rights of others* and conscious action in deliberate disregard of them.

is recoverable only in cases that involve liquidated damages or damages susceptible of reliable and reasonably accurate methods of calculation. *Estreen v. Bluhm,* 79 Wis. 2d 142, 158–59, 255 N.W.2d 473, 482–83 (1977). The Benkes persuasively argue, however, that the purpose of prejudgment interest is to put a plaintiff in a position where he would have been had he had his trial and recovered judgment *immediately* after the damages were done.

The Benkes cite the landmark case of *Busik v. Levine,* 307 A2d 571, 575 (NJ 1973), which we feel is worthy of recitation here.

Interest is not punitive . . . ; here it is compensatory to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed. We mentioned earlier the judge-made limitation that interest should not be allowed if the claim was unliquidated. That limitation apparently rested upon the view that a defendant should not be deemed in default when the amount of his liability has not been adjudged. But interest is payable on a liquidated claim when liability itself is denied, even in good faith . . . . The fact remains that in both situations *the defendant has had the use, and the plaintiff has not, of moneys which the judgment finds was the damage plaintiff suffered.* This is true whether the contested liability is for a liquidated or for an unliquidated sum. For that reason, the concept of a "liquidated" sum has often been strained to find a basis for an award of interest. [Citations omitted; emphasis added.]

We note that the supreme court, in *Nelson v. Travelers Insurance Co.,* 102 Wis. 2d 159, 169, 306 N.W.2d 71, 76 (1981), hinted it was considering a change in the law, more along the lines of the *Busik* rationale and also along the lines of an impressive array of other state courts adopting similar philosophy. The *Nelson* court stated:

We are no longer firmly convinced that only the unliquidated or unliquidatable character of damages should determine whether interest is payable on the amount due. . . . [T]o the extent that those injuries are ultimately compensable, the wrongdoer who must make compensation has the use of the money until payment is made (and he has such use whether he is aware of the amount due or not). Conversely, the plaintiff, who *should* have the money, does not have it and thus cannot put it to use . . . . . . . The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money—a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead. [Emphasis in original.]

While the supreme court has pointed to a future change in the law, it has not yet seen fit to adopt it. Even though we feel that changing the prejudgment interest law is within the province of our appellate courts to decide, not the legislature, this court will not make that decision. However we feel about the *Busik* reasoning, and we find it very persuasive, we cannot adopt it for that is more properly the function of the supreme court. For that reason, and that reason alone, we decline to favor the Benkes' argument.

■

The Benkes argue, in the alternative, that their claim was a liquidated one, and, therefore, they were entitled to prejudgment interest at five percent on the coverage issue. We agree, and reverse the trial court. The evidence shows that the damage, from the beginning, constituted a total loss equal to or in excess of the $65,000 policy limits. The damage amount was stipulated to by counsel and inserted in the verdict by the court. Accordingly, the Benkes will be allowed to collect five percent

interest compounded annually on the $65,000 from the time of the collapse pursuant to sec. 138.04, Stats.

*By the Court.*—Judgment affirmed in part; reversed in part.