**Stella DUIR, Plaintiff-Appellant,**

**v.**

**JOHN ALDEN LIFE INSURANCE COMPANY, a foreign insurance corporation, Defendant-Appellee.**

**No. 83–3138.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1984.

Decided Feb. 7, 1985.

Roy T. Traynor, Wausau, Wis., for plaintiff-appellant.

Anthony R. Varda, Dewitt, Sundby, Huggett, Schumacher & Morgan, Madison, Wis., for defendant-appellee.

Before WOOD and FLAUM, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.*

FLAUM, Circuit Judge.

This case focuses on the law of Wisconsin concerning a bad faith action brought by an insured against an insurance company. The plaintiff Stella Duir brought this diversity action against the defendant John Alden Life Insurance Company ("JALIC") seeking compensatory and punitive damages following JALIC's refusal to pay her medical expenses under a group health insurance policy. The district court granted defendant's motion for summary judgment. 573 F.Supp. 1002. On appeal, we affirm for the reasons set forth below.

---

* The Honorable Clement F. Haynsworth, Jr., Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, is sitting by designation.

## I.

For over twenty years, Stella Duir, a citizen of Wisconsin, had worked for Stark's Gamble Store in Mosinee, Wisconsin. During this time, Duir never applied for insurance coverage under the group plan offered by JALIC, a Minnesota corporation. On October 1, 1971, however, Duir applied for and JALIC issued a group policy which provided life, health, and accident insurance. The policy contained an exclusion for any charges for injuries "arising out of or in the course of employment for remuneration or profit or in connection with sickness for which benefits are provided under any workmen's compensation act or similar legislation." The policy also had a notice and proof of claims section requiring the insured to give the insurance company notice of a loss within a certain period of time and to submit proof of loss forms or written proof explaining the loss.

Shortly after coverage began on her policy with JALIC, Duir received extensive medical treatment for a back problem that was later diagnosed as degenerative disc disease. Claiming that her back problem was a preexisting condition, JALIC refused to pay for some of the expenses connected with Duir's back problem. In 1972, Duir sued JALIC for $2,378.65, and the parties settled for $1,000. Since the 1972 suit, JALIC has paid over $11,000 to Duir under the policy for her back problem.

On December 29, 1979, Duir slipped on a ball bearing while working at Stark's Gamble Store and since then has been unable to return to work. On January 14, 1980, JALIC received notice of Duir's injury through a claim that she made for disability benefits under a separate credit disability policy that Duir had with JALIC. On January 29, 1980, Duir wrote a letter to JALIC claiming general disability benefits under her group policy with JALIC. She stated that she had fallen and injured her back while working at Stark's Gamble Store and requested the necessary forms to collect sick pay. In response to this letter, JALIC's claims manager, Fred Myers, sent Duir a claim form for the loss of time group disability

benefits and stated that the $250/month maximum benefit would have to be reduced if Duir was receiving disability benefits under worker's compensation.

In a second monthly claim filed under the credit disability policy on February 2, 1980, Duir again gave no indication as to whether she was receiving worker's compensation benefits. For this reason, Myers wrote a letter to Duir's employer on March 4, 1980, asking him how much Duir was collecting in loss of time benefits under worker's compensation. On March 8, 1980, Duir's employer forwarded a letter from his worker's compensation insurer, Heritage Mutual Insurance Company ("Heritage"), which stated: "As a result of our investigation, we have found [Duir's injury] to be a compensable Worker's Compensation claim." The letter also stated that Duir was receiving $77.33 per week in worker's compensation benefits and that Heritage had paid all mileage costs, prescriptions, and medical billings submitted. Myers wrote back to Duir on March 24, 1980, explaining that the $250/month loss of time benefit under her group policy with JALIC would be reduced by the weekly worker's compensation benefits that she was receiving from Heritage.

On March 26, 1980, Heritage notified Duir that due to its inability to connect Duir's back problem to her work injury, it would not pay any additional benefits under worker's compensation. Duir immediately proceeded to write to Myers explaining that Heritage had decided not to pay any further bills for her injury. In a letter dated April 3, 1980, Myers explained to Duir that JALIC did not have sufficient information from her, her employer or her doctor in order to process her hospital expenses. He sent her a health insurance claim form and asked her to complete all the questions. Instead of returning this form to JALIC, Duir retained an attorney, Roy Traynor, who sent JALIC a notice of retainer on May 12, 1980, and stated that he was going to represent Duir on any claim arising out of her injury at Stark's Gamble Store. On May 22, 1980, Myers

sent Traynor a copy of his April 3 letter to Duir, which had sought further details of the injury, and questioned Traynor as to whether Duir was going to appeal Heritage's denial.[1]

Meanwhile, Duir brought a claim against Heritage for $2,010 in temporary total disability benefits, $8,305 in medical expenses, and $7,000 in permanent partial disability benefits. Following conflicting evidence as to whether Duir's back injury was due entirely to her fall at work or to her preexisting back condition, Heritage and Duir entered into a settlement whereby Duir was to receive $10,000, minus any amounts already received for a total of $8,657.65. In June 1981, the Wisconsin Department of Industry, Labor, and Human Relations approved the settlement.

On June 30, 1981, Traynor sent Myers a copy of Duir's settlement with Heritage, but did not include copies of the doctors' reports that had been incorporated into the settlement. Traynor explained that he had not contacted Myers since his May 12, 1980 notice of retainer because he had been handling the worker's compensation claim. Traynor claimed that JALIC was responsible for Duir's unpaid medical expenses of $8,551.99 under the group policy because the settlement between Duir and Heritage did not definitively establish Heritage's liability under the worker's compensation provisions. On July 21, 1981, Myers wrote to Traynor stating that JALIC would negotiate over a reasonable arbitrary settlement and asking Traynor to name an amount. On September 11, 1981, Myers again wrote to Traynor to inquire why JALIC owed Duir any sum when Heritage's settlement seemed to cover all of Duir's expenses. Although Myers noted that Duir's settlement with Heritage did not give a clear-cut indication as to whether or not Duir's back problem was work-related, he did state that JALIC was willing to negotiate. After several months of negotiations and a subsequent four-month break in negotiations,

Traynor wrote to Myers on April 6, 1982, in order to obtain copies of all bills that Duir's doctors had forwarded to JALIC and to tell Myers that Duir had incurred further expenses. Three days later, Myers replied to Traynor's letter, stating that the maximum loss of time benefits under the policy was $1,500 and that JALIC's legal department would have to examine Duir's file to determine the extent of JALIC's liability in view of Heritage's settlement, which did not address the issue of whether Duir's injury was work-related. Myers also sent Traynor copies of Duir's bills and told Traynor that he would await his response. In October 1982, pursuant to a management decision, JALIC paid Duir $1,500 to cover six month's loss of time benefits, but did not admit liability.

Previously, on January 25, 1982, Traynor had notified Myers that the Social Security Administration had granted Duir relief on her disability claim. Traynor stated that based on his past unpleasant dealings with the Social Security Administration, he was not sure that Duir's claim was finally resolved. He went on to conclude that: "As soon as [he was] more certain about the situation on the benefits, [he would] be in contact with [Myers] again concerning final settlement of the claim of Stella Duir with [JALIC]." Traynor noted that the sum that Duir might ultimately receive from the Social Security Administration would have an effect on the not as yet finalized settlement between Duir and JALIC. Traynor concluded by thanking Myers for his cooperation. In late April 1982, the Social Security Administration approved an award of total disability benefits to Duir retroactive to June 1980.

On November 30, 1982, seven months after the Social Security award was granted, Traynor notified Myers of the award and sought an extension of benefits and a waiver of premiums retroactive to June 1980. In response to a request by Myers,

---

**1.** Traynor never responded to Myers's May 22, 1980 letter. However, Duir must have forwarded additional medical bills to JALIC because on April 21, 1981, Rosemary Ludonese, a claims department employee, wrote to Duir stating that she was not entitled to benefits under the group policy since her injury was work-related.

Traynor sent Myers a copy of the Social Security award on January 11, 1983. Traynor also included a summary of Duir's back problems through April 1981 and claimed that many of these problems had existed before Duir's on-the-job injury and were aggravated by that injury. On March 4, 1983, Duir received a check from JALIC for $2,236.36 in order to reimburse her for premiums that she had paid on the group policy since June 1980.

On March 30, 1983, Duir sued JALIC for an alleged bad faith refusal to pay her medical expenses under the group health policy and sought both compensatory and punitive damages. The district court granted JALIC's motion for summary judgment because Duir failed to submit proof of claim information sought by JALIC and because the settlement with the worker's compensation carrier, Heritage, supported an inference that Duir's injuries were work-related and thus excluded from the policy's coverage. As a result of the uncertainty about the cause of Duir's injury, the court concluded that JALIC had a reasonable basis for denying her claim until a judicial determination could be made. On appeal, Duir contends that the district court misunderstood insurance company bad faith law and the insurance company's duty of investigation.

## II.

█ The tort of bad faith arising from the settlement of insurance claims has been developed by the courts in Wisconsin. *A.W. Huss Co. v. Continental Casualty Co.*, 735 F.2d 246, 249 (7th Cir.1984). The Wisconsin Supreme Court has held that an insured can sue its insurer directly following the insurer's bad faith refusal to honor the insured's claim. *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 680, 271 N.W.2d 368, 371 (1978). The tort of bad faith in the context of insurance claims is not a breach of contract claim, but rather a distinct tort action through which a prevailing insured can recover damages. *Id.* at 686, 271 N.W.2d at 374. The tort of bad faith has its roots in the special duty of fair dealing and good faith owed by the insurer to its insured by virtue of the insurance contract. *Id.* at 687–89, 271 N.W.2d at 374–75. When the insurer unreasonably, purposefully, and in bad faith withholds or tries to evade payment of its insured's claim, it becomes subject to liability for breach of its fiduciary duty. *Id.* at 688–90, 271 N.W.2d at 375–76.

█ In order to prove a claim of bad faith, an insured must show: (1) the absence of any reasonable basis by the insurer for denying the benefits of the policy to the insured; and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Id.* at 691, 271 N.W.2d at 376. A court must determine whether a reasonable insurer under the particular circumstances would have denied or delayed payment of a claim as well as whether the insurer recklessly disregarded a lack of a reasonable basis for the insurer's denial of a claim or proof submitted by the insured. *Benke v. Mukwonago-Vernon Mutual Insurance Co.*, 110 Wis.2d 356, 362, 329 N.W.2d 243, 246–47 (Ct.App.1982). The courts have defined bad faith as the knowing failure of an insurer to exercise an honest, intelligent, and informed judgment as to any claim submitted by an insured. *Anderson v. Continental*, 85 Wis.2d at 692, 271 N.W.2d at 377. However, when an insurer exercises its duty of ordinary care and reasonable diligence in investigating and evaluating claims and determines that a claim is "fairly debatable," the insurer is entitled to debate and/or litigate the claim if it feels that there is a question of law or fact which must be decided before the insurer, in good faith, is required to pay. *Id.* at 693, 271 N.W.2d at 377; *Benke v. Mukwonago-Vernon*, 110 Wis.2d at 364–65, 329 N.W.2d at 248.

█ In assessing a claim of bad faith by an insured, the courts in Wisconsin have focused on whether the insured complied with the policy requirements, whether the insurance company promptly evaluated the insured's claim, and whether the insurance company offered a reasonable basis for

denying or delaying the payment of the insured's claim following a careful evaluation of the claim. *See, e.g., Davis v. Allstate Insurance Co.,* 101 Wis.2d 1, 7–8, 303 N.W.2d 596, 599–600 (1981); *Anderson v. Continental,* 85 Wis.2d at 680–82, 692, 271 N.W.2d at 371–72, 377; *Poling v. Wisconsin Physicians Service,* 120 Wis.2d 603, 607–09, 357 N.W.2d 293, 296–97 (Ct.App. 1984); *Benke v. Mukwonago-Vernon,* 110 Wis.2d at 364–65, 329 N.W.2d at 247–48; *James v. Aetna Life and Casualty Co.,* 109 Wis.2d 363, 369–70, 326 N.W.2d 114, 116–17 (Ct.App.1982). For example, in *Poling v. Wisconsin Physicians,* a Wisconsin court of appeals affirmed a jury verdict finding bad faith by a group insurer in refusing to honor an elderly couple's claims for nursing home care rendered to the wife. 120 Wis.2d at 606, 357 N.W.2d at 295. The court found that the group insurer's concession at trial that the insured was receiving skilled care in the nursing home, after it had consistently maintained that the insured's care was custodial and thus not covered under the policy, revealed that the insurer had not properly investigated its insured's claim at the outset. *Id.* at 606–09, 357 N.W.2d at 296–97. The court also held that the insurer had not had a reasonable basis for denying policy benefits to its insured because the claims director testified that his company's denial of its insured's claim was based on a doctor's report when, in fact, this report was not yet in existence at the time of the company's denial of benefits. *Id.* at 608–09, 357 N.W.2d at 296–97.

Similarly, in *Benke v. Mukwonago-Vernon,* a Wisconsin court of appeals held that an insurer had violated its duty of good faith to its insured by making an immediate determination that the damage to its insured's building was due to snow, thereby precluding recover under the policy. 110 Wis.2d at 363–64, 329 N.W.2d at 247. In spite of evidence to the contrary, the insurer adhered to its belief until it finally found an expert to support its theory that snow had damaged the building. *Id.* at 365, 329 N.W.2d at 248. The court concluded that a reasonable insurer must conduct a neutral, detached investigation and exercise the same standard of care as if the insurer were exercising ordinary diligence in its own affairs. *Id.* at 364–65, 329 N.W.2d at 247–48.

Viewing the record and the inferences drawn therefrom in the light most favorable to Duir, we conclude that the district court correctly determined that Duir did not raise any genuine issue of material fact as to whether JALIC breached its duty of good faith in its handling of Duir's claim for benefits under her group policy. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cedillo v. International Association of Bridge and Structural Iron Workers,* 603 F.2d 7, 11 (7th Cir.1979). The district court properly granted summary judgment to JALIC under Rule 56(c) of the Federal Rules of Civil Procedure because Duir specifically failed to raise any genuine issue of material fact as to: (1) whether JALIC lacked a reasonable basis for delaying or denying payment of benefits under the policy to Duir; and (2) whether JALIC had knowledge or proceeded in reckless disregard of the lack of a reasonable basis for denying her claim.

On the first point, JALIC did not lack a reasonable basis for delaying the payment of benefits under the policy to Duir. In their correspondence to JALIC, both Duir and Traynor stated that Duir was injured while working at Stark's Gamble Store. In response to her first letter claiming that she had been injured while on the job, Myers explained to Duir that her maximum monthly benefit under the group policy would have to be reduced by any amount that she was receiving from worker's compensation.[2] Following his request to Duir's

---

**2.** The reasonableness of JALIC's actions vis-à-vis Duir is also made apparent by a close reading of the exclusion of benefits provision of Duir's group policy. This provision excluded from coverage any charges for injuries (1) arising out of or in the course of employment or (2) arising in connection with sickness for which benefits were provided under worker's compensation

employer for information as to the cause of Duir's injury, Myers received a copy of a letter sent to Duir's employer by the worker's compensation insurer, Heritage, which stated that Duir's injury was compensable by worker's compensation and that Duir was receiving $77.33 per week in such benefits. At this time, following this neutral and careful investigation, Myers had a reasonable basis for denying Duir's claim.

Furthermore, even when JALIC later learned that Heritage had decided not to pay any additional bills for her injury at work, JALIC continued to have a reasonable basis for declining to offer her benefits under the policy and for believing that Duir's claim was fairly debatable. After over a year of silence from Traynor following Myers's requests for further details as to Duir's injury, Traynor sent Myers a copy of Duir's compromise settlement with Heritage. Paragraph nine of this compromise settlement specifically provided that the parties to the settlement were of the opinion and agreement that there existed "a genuine dispute" between the parties as to the cause of liability. In view of the settlement's lack of a clear-cut indication as to whether Duir's back injury was work-related, JALIC was justified in classifying Duir's claim as fairly debatable and in concluding that undecided questions of law and fact had to be resolved before it would

be required to pay benefits to Duir in good faith.

JALIC's conclusion that Duir's claim was fairly debatable is especially appropriate in view of the clearly established Wisconsin case law providing that an employer will be responsible for an employee's injury at work if that injury aggravates or accelerates a preexisting condition beyond its normal progression. *Reich .v. Industrial Commission*, 40 Wis.2d 244, 268–69, 161 N.W.2d 878, 892 (1968); *Lewellyn v. Industrial Commission*, 38 Wis.2d 43, 58–59, 155 N.W.2d 678, 686–87 (1968). Thus, even though Heritage might have concluded that Duir's injury was not work-related, but rather preexisting, Heritage might still have been held liable for Duir's injury if her injury at work aggravated beyond normal progression the severity of her back problem. In addition, since JALIC had observed that the amount of the settlement between Duir and Heritage seemed to cover all of the expenses that Duir had incurred, JALIC reasoned that it did not owe any additional amount to Duir. Because there was "a genuine dispute" as to the cause of Duir's injury and in view of Wisconsin case law on an employer's liability for the aggravation of an employee's preexisting condition, we conclude that JALIC had a reasonable basis for declining to offer the benefits of the group policy to Duir until her claim was no longer fairly debatable.[3]

---

legislation. Thus, even if Duir was not receiving any worker's compensation benefits, she still might not be eligible for benefits under her group policy with JALIC if her injury arose during the course of employment. The district court concluded that JALIC's interpretation of its policy as a two-part exclusion was "needlessly artificial" because a bodily injury arising in the course of employment was merely an alternative way of describing an injury that would be properly covered by worker's compensation. We decline to determine if JALIC's two-part interpretation of the exclusion clause is valid because even if the clause is read as only denying benefits for any work-related injury for which worker's compensation benefits are paid, we still hold that JALIC had a reasonable basis for denying Duir's claim.

3. Duir argues that JALIC should have paid her benefits under the group policy pending resolution of her worker's compensation claim. Rely-

ing on the case of *Silberg v. California Life Ins. Co.*, 11 Cal.3d 452, 521 P.2d 1103, 113 Cal.Rptr. 711 (1974), Duir claims that JALIC could have given her benefits under the group policy and could have asserted a lien against any worker's compensation benefits that she might have ultimately obtained. We decline to follow this precedent, which forces an insurer to make payment to its insured before the insured's fairly debatable claim is even resolved, because Wisconsin case law clearly gives the insurer the right to debate or litigate a claim when it feels that there is a question of law or fact that must be resolved before it can, in good faith, be required to pay its insured. *See, e.g., Benke v. Mukwonago-Vernon·Mutual Ins. Co.*, 110 Wis.2d 356, 364–65, 329 N.W.2d 243, 247–48 (Ct.App. 1982). Furthermore, it took Traynor one year to respond to Myers's letter requesting additional details on Duir's injury following denial of worker's compensation benefits, and Traynor

As to the second element of a cause of action for bad faith, we conclude that Duir has failed to present any genuine issue of material fact as to whether JALIC had knowledge or proceeded in reckless disregard of the lack of a reasonable basis for denying Duir's claim. Throughout its dealings with Duir and Traynor, JALIC has made an honest and good faith effort to fairly process, investigate, and respond to Duir's claims. Unlike the reckless indifference by the insurer to the insured's sworn proof of loss forms in *Anderson v. Continental*, 85 Wis.2d at 680–82, 271 N.W.2d at 371–72, Myers promptly responded to both Duir's and Traynor's letters. Furthermore, Myers continually asked Duir and Traynor in numerous letters to complete claim forms because his company did not have sufficient information from which to process her claims. *See Davis v. Allstate*, 101 Wis.2d at 7, 303 N.W.2d at 599 (substantial compliance with terms of insurance contract necessary for insured to recover under policy). Following one such request, Myers merely received a notice of retainer from Traynor and then did not hear from the attorney for over one year. In view of the huge time gaps in Traynor's and Duir's correspondence with Myers and in view of a failure by both Duir and Traynor to complete required claim forms, JALIC could have only concluded that Duir had decided not to pursue her claims or had received worker's compensation benefits. Finally, following the settlement between Heritage and Duir, JALIC offered to negotiate with Duir in order to fairly settle her claims. Even Traynor thanked Myers for his cooperation in handling Duir's case in a letter describing the details of an award by the Social Security Administration, which Traynor noted would also have an effect on Duir's negotiations with JALIC. In sum, JALIC did not proceed with any knowledge or reckless disregard of the lack of a reasonable basis for denying Duir's claim, but rather honestly and diligently responded to

Duir's letters and attempted to cooperate in order to reach a fair settlement.

In conclusion, the district court's grant of summary judgment to JALIC is affirmed.

---

never had his client sign an indemnification agreement whereby JALIC would pay Duir benefits pending resolution of the worker's compensation proceeding in exchange for a lien on any benefits obtained.