**OCTAVE K. JUSTIN, Plaintiff**

v.

**GUARDIAN INSURANCE COMPANY, INC., Defendant**

Civil No. 1986/115

District Court of the Virgin Islands

Div. of St. Croix

September 20, 1987

JEAN-ROBERT ALFRED, ESQ. (LAW OFFICES OF JEAN-ROBERT ALFRED), St. Croix, V.I., *for plaintiff*

MICHAEL A. JOSEPH, ESQ. (LAW OFFICES OF MICHAEL E. JOSEPH), St. Croix, V.I., and FREDERICK O. FERRAND, ESQ. (LAW OFFICES OF WILFREDO GEIGEL), St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM AND ORDER

We write today to clarify Virgin Islands law on the tort of bad faith. In addition, we reject a constitutional challenge to that tort; but we will require a greater evidentiary standard for the proof of punitive damages.

## I. FACTS

The plaintiff, Octave Justin, procured liability and physical damage insurance on March 25, 1985, for his Ford taxi van through the defendant, Guardian Insurance Co., Inc. ("Guardian"). After the van suffered a fire of undetermined origin on November 18, 1985, Justin filed a claim with Guardian. (Amended Complaint ¶¶4-10.)[1]

On November 21, 1985, Guardian adjuster Steven E. Jackson physically inspected Justin's van. Nearly four months later, Guardian notified Justin that his claim was being rejected. (Am. Comp. Exh. B.) Jackson explained by letter dated April 4, 1986, to Justin's attorney, that Justin's claim was denied because the license number Justin supplied to Guardian was registered to another vehicle. Jackson noted that an additional reason was because he could not find serial number plates on the van. (Am. Comp. Exh. C.)

---

[1] In his original complaint, Justin alleged the fire was electrical in nature. Because of that allegation, Guardian originally moved for summary judgment based on its contract with Justin which had an exclusionary clause for loss due to electrical breakdown. By order dated September 23, 1987, we allowed Justin to amend his complaint to allege that the fire was of unknown origin, and accordingly we denied Guardian's motion.

Justin filed this suit in response alleging that Guardian breached its duty of good faith to adequately investigate his claim. He adds that Guardian had no reasonable basis for denying his claim, and that the delay in deciding the claim and the subsequent improper investigation constituted bad faith. (Am. Comp. ¶¶14–24.)[2]

Guardian challenges this claim by way of two summary judgment motions. In its first motion Guardian alleges that these facts do not make out a claim for punitive damages. In a subsequent motion it challenges the constitutionality of the tort of bad faith. Specifically it argues that the elements of the tort of bad faith are unconstitutionally vague so as to violate the first amendment. Furthermore, Guardian argues that the tort conflicts with the contracts clause as well as the equal protection clause. Finally, it argues that in the alternative we should trifurcate the trial into three stages, coverage, bad faith and damages; and that we should require Justin to meet a burden of "beyond a reasonable doubt" in proving punitive damages.

Because we write to clarify the law of bad faith in the Virgin Islands and we find that material facts exist in this case, we will deny Guardian's first motion for summary judgment. In addition, we categorically reject Guardian's constitutional challenges, and find meritless its arguments for a trifurcated trial; therefore, the second motion for partial summary judgment will also be denied.

## II. DISCUSSION

We have not had occasion prior to today to write concerning the tort of bad faith.[3] The Third Circuit, however, has pointed out that "most states recognize two types of remedies when an insurer fails to settle claims made against it by the insured party." The first is a breach of contract remedy, and the second is the recent development in tort law where "an insurer can also be sued in tort for failure to settle a claim in good faith." Polito v. Continental Cas. Co., 689 F.2d 457, 461 (3d Cir. 1982) (citation omitted). See, e.g.,

---

[2] Justin also alleges that Guardian's conduct was intentional or reckless and caused him severe emotional distress. He adds that Guardian's actions were malicious, wanton and outrageous in character to warrant the imposition of punitive damages. Am. Comp. ¶¶25–29.

[3] In an unpublished matter, Ohl v. Guardian Insurance Company, Inc., Civ. No. 1985/326 (D.V.I. 1987), the issue of bad faith was presented to the jury which returned an award in favor of the plaintiff. However, no opinion was written in that case, nor was it appealed. We add here our instruction in that case in relevant part:

McNally v. Nationwide Ins. Co., 815 F.2d 254 (3d Cir. 1987) (applying Delaware law). But see, e.g., Saltou v. Dependable Ins. Co., Inc., 394 N.W.2d 629, 633 (Minn. App. 1986); Riverside Ins. Co. v. Pedigo, 430 N.E.2d 796 (Ind. App. 1982) (punitive damages for failure to pay insured's claim awardable only where conduct amounts to independent common law tort such as fraud).

Unfortunately, we have uncovered no Third Circuit case discussing the elements of the tort from one of our sister jurisdictions, even though there is ample case law from other courts on the subject.[4] After reviewing these precedents we adhere to our decision in Ohl to recognize the existence of the tort in the Virgin Islands.[5] We write to define its elements.

A) *What is Bad Faith?*

██ The tort of bad faith evolved in most jurisdictions from the duty of fair dealing and good faith insurers owe their insured by virtue of an insurance contract. See, e.g., Duir v. John Alden

---

"In every insurance contract, it is implied that the parties are dealing in what we call 'good faith'. In fact, they have a duty to act in good faith toward one another.

. . .

A person who is an insured, . . . can sue the insurance company under a claim of bad faith under certain circumstances. If, after the insurance company did an investigation, the company decided that the claim was valid, but it refused to pay the claim, or the insurance company intentionally refused, or failed to investigate whether there was any lawful reason for denying the claim, then it may be liable to the person to whom it issued the policy for its bad faith.

Likewise, bad faith may exist if the insurance company unreasonably, purposefully and in bad faith withholds, or tries to evade paying the claim of the person it had insured.

However, an insurance company is not guilty of bad faith for refusing to pay the claim of a person who is an insured where there is a debatable question of coverage. Nor is an insurance company guilty of bad faith if it reasonably believes it has a legal defense for refusing to grant coverage. Nor, finally, is there bad faith if there is a legitimate and substantial discrepancy over the amount of the claim."

[4] See, e.g., cases cited in "Insurance Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due under Contracts." 47 A.L.R.3d 314, 351 (1977), and (Supp. 1987) at 18–34.

[5] Guardian does not challenge the policy reasons in favor of adopting the tort of bad faith in this jurisdiction. In any case in light of the Circuit's recognition that a majority of the jurisdictions recognize the cause of action, and the statutory requirement for us to follow the majority rule; see 1 V.I.C. § 4, we believe the policy justifications speak for themselves. Moreover, as early as Buntin v. Continental Ins. Co., 18 V.I. 607, 525 F. Supp. 1077 (D.V.I. 1981), Chief Judge Christian made note of the emerging causes of action sounding in tort involving the relationship between the insurer and the insured. Id. at 1081.

Life Ins. Co., 754 F.2d 245, 249 (7th Cir. 1985) (citations omitted) (applying Wisconsin law). When made out, it imposes tort liability for an insurer's refusal to pay a direct claim where there exists no legitimate reason either based in law or fact to deny the insured's claim. See, e.g., Dempsey v. Auto Ins. Co., 717 F.2d 556, 560 (11th Cir. 1983) (applying Alabama law) (citation omitted); Merchants National Bank v. South Eastern Ins. Co., 751 F.2d 771, 775 (5th Cir. 1985) (applying Mississippi law); Accord Frommoethelydo v. Fire Ins. Exchange, 42 Cal. 2d 208, 228 Cal. Rptr. 160, 721 P.2d 41, 43 (Cal. 1986). It does not arise out of the contract, but it is an obligation imposed by law. Bibeault v. Hanover Ins. Co., 417 A.2d 313, 316 (R.I. 1980); United States Fidelity & Guaranty Co. v. Peterson, 540 P.2d 1070, 1071 (Nev. 1975).

█ Different jurisdictions vary slightly with what is required by the plaintiff to make out a claim for bad faith. See, e.g., Duir, supra at 249. However, we have decided to adhere to the following standard because it definitively puts the parties on notice of their obligations and duties. Therefore, in the Virgin Islands, in order to make out a cause of action for the tort of bad faith a plaintiff will be required to show: 1) the existence of an insurance contract between the parties and a breach by the insurer; 2) intentional refusal to pay the claim; 3) the nonexistence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact; 4) the insurer's knowledge of the absence of such a debatable reason or 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason. Dempsey, supra at 560 (quotation omitted). This will require in most normal cases, that a plaintiff obtain a directed verdict on the contract in order to even get to the jury and make out a successful bad faith claim.[6] Dempsey, supra at 561 (quoting Safeco Insurance Co. of America v. Sims, 435 So. 2d 1219, 1223 (Ala. 1982).

██ Of course, in the Virgin Islands to get to a jury on the issue of punitive damages, the plaintiff is required to show that the

---

[6] Indeed, in Ohl, the only other case in this jurisdiction that this Court is aware of where the tort of bad faith has gone to the jury, a directed verdict was granted for the plaintiff on the contract. Here, however, the plaintiff has chosen not to go forward on the contract claim, but he still will have to prove the existence of the contract and the breach to recover on his tort claim.

acts complained of were outrageous, done with evil motive or reckless indifference to his rights. Berroyer v. Hertz, 672 F.2d 334 (3d Cir. 1982) (quoting Restatement (Second) of Torts § 908(2) (1979)); cf., Smith v. Wade, 461 U.S. 30 (1982). However, we will require the plaintiff in a bad faith action to prove the existence of these elements by clear and convincing evidence. Cf., Acosta v. Honda Motor Co., Ltd., 712 F.2d 828, 837 (3d Cir. 1983) (requiring clear and convincing evidence for an award of punitive damages in 402A actions); accord Linthium, supra at 681. See, also, David v. Pueblo Supermarket, 740 F.2d 230 (3d Cir. 1984) (a plaintiff must meet an extremely high burden of proof to establish entitlement to punitive damages).[7]

Since facts are clearly in dispute as to each of these elements, a trial is required. Guardian has not challenged this point. Moreover, sufficient facts exist as to Guardian's recklessness to defeat its summary judgment motion on punitive damages. See Aff. of Trantham.

B) *Guardian's Constitutional Challenge*

Guardian argues that the tort of bad faith is impermissibly vague since insurers such as itself have no idea what action vis-a-vis the insured is permissible. We believe that this opinion clarifies any vagueness which may heretofore have existed and, therefore, the fact that the plaintiff must plead and prove the elements as set out above, safeguard Guardian's due process rights. Accord McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981). The rest of Guardian's constitutional arguments are without merit.[8]

---

[7] Guardian asks us to adopt a heightened evidentiary standard for the award of punitive damages in bad faith claims. We reject its request for a "beyond a reasonable doubt" standard since it is without basis in law. However, we believe that a clear and convincing evidence standard is appropriate. Similar policy considerations cited by the Circuit in Acosta for adopting this standard in 402(A) suits apply to bad faith claims.

[8] Acosta, supra at 837, specifically lays to rest Guardian's equal protection claim for it affirms that the defendant's wealth may be considered in assessing punitive damages. See, also, Restatement (Second) of Torts § 908, comment (e). As to its contracts clause claim, we suggest Guardian read Nieves v. Hess Oil Virgin Islands Corp., 819 F.2d 1237 (3d Cir. 1987). Bifurcation or trifurcation not being constitutionally required, we believe it far too close to trial for us to exercise our discretion in that regard.

## III. CONCLUSION

Having clarified Justin's burden, we note that material facts exist as to each of the elements we enumerated.[9] For this reason Guardian's motions for summary judgment will be denied.[10]

## ORDER

THESE MATTERS are before the Court on motions of the defendant for summary judgment and partial summary judgment, and on motion of the plaintiff in limine. Having filed an opinion of even date herewith and the premises considered, now therefore it is

ORDERED:

THAT defendant's motions for summary judgment and partial summary judgment be, and the same are hereby, DENIED.

It is further ORDERED:

THAT plaintiff's motion in limine be, and the same, is hereby DENIED.

---

[9] It is regrettable that we only had the opportunity to clarify the law in this area on the eve of the trial. However, as in Ohl, neither party addressed the issue to the Court until the last minute.

[10] Justin moves in limine to bar hearsay testimony. Because such testimony is offered by Guardian not for the truth of the matter asserted therein, but to establish Guardian's state of mind in relation to discovering legitimate reasons to deny Justin's claim, it may be admissable for that purpose. Of course, we will give a cautionary instruction to the jury.